Filed 2/28/22  P. v. Acuna CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> EDSON ACUNA, <br><br> Defendant and Appellant. | D078365, D078885 <br><br><br> (Super. Ct. No. SCD279161) |

CONSOLIDATED APPEALS from a judgment and a postjudgment order of the Superior Court of San Diego County, Charles G. Rogers and Eugenia A. Eyherabide, Judges.  Remanded for resentencing with directions; postjudgment order vacated.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Acting Assistant Attorney General, Arlene A. Sevidal, Andrew S. Mestman and Susan Elizabeth Miller, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Edson Acuna guilty of one count of first degree murder (Pen. Code, § 187, subd. (a)),[1] with the special circumstance that it was committed during a burglary (§ 190.2, subd. (a)(17)); one count of robbery (§ 211); one count of burglary (§ 459); one count of possession of a firearm by a felon (§ 29800, subd. (a)(1)); one count of transporting an assault weapon (§ 30600, subd. (a)); one count of possessing an assault weapon (§ 30605, subd. (a)); one count of illegally possessing ammunition (§ 30305, subd. (a)(1)); and one count of carrying a loaded firearm in a vehicle (§ 25850, subd. (a)). The jury also made true findings on certain firearm enhancements for the murder, robbery and burglary counts, including that Acuna intentionally and personally discharged a firearm during the murder, causing great bodily injury and death (§ 12022.53, subd. (d)). The trial court sentenced Acuna to an indeterminate sentence of life without parole (LWOP), plus 26 years to life, in addition to a determinate sentence of 26 years, eight months.

Acuna contends (1) the trial court prejudicially erred by refusing a proposed pinpoint instruction on the duration of the crime of burglary for the purpose of the escape rule as it relates to felony murder; (2) the trial court prejudicially erred by allowing the People to present evidence that the murder victim was a member of the United States Navy; (3) because he was a youthful offender at the time of the murder, Acuna's constitutional right to equal protection was violated by the imposition of an LWOP sentence; (4) the order requiring Acuna to pay certain fines and fees should be vacated because he does not have the ability to pay them; (5) due to the recent enactment of Government Code section 6111, we should order that the $154 criminal justice administration fee imposed pursuant to former Government Code

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

section 29550.1 be stricken; (6) due to a recent statutory amendment giving a trial court the discretion to choose which count should be punished when multiple counts are eligible to be stayed under section 654 (rather than the former law which required that the count with the longest term be selected for punishment), we should remand to allow the trial court to exercise its discretion on that issue; and (7) due to a recent statutory amendment to section 1170 impacting the conditions under which a trial court may impose an upper term sentence on any offender or a middle or upper term sentence on a youth who commits the crime when under 26 years of age, we should remand for resentencing. As to the last two points, the People concede that a remand is warranted.

After Acuna filed an appeal, the trial court issued an order addressing its failure to pronounce sentence on the count of carrying a loaded firearm in a vehicle (§ 25850, subd. (a)) (count 9). Specifically, the trial court (through a different superior court judge) issued an ex parte minute order stating that the sentencing minute order would be corrected to reflect a sentence of 365 days custody with credit for time served for count 9. In an appeal that we have consolidated with Acuna's appeal from the judgment, Acuna contends that the trial court improperly issued the ex parte minute order and that we should vacate it. The People agree that the trial court exceeded its jurisdiction in issuing the ex parte minute order.

We conclude that based on the recent enactment of Government Code section 6111, the $154 criminal justice administration fee imposed under Government Code section 29550.1 should be vacated insofar as any amounts remain unpaid as of July 1, 2021. As to Acuna's remaining contentions, the only meritorious arguments are those that the People concede have merit. Accordingly, we order that the trial court's ex parte minute order imposing

3

sentence on count 9 is vacated and this matter is remanded for resentencing to allow the trial court to (1) exercise its discretion to determine which of the counts subject to section 654 should be punished, and (2) apply the amended version of section 1170. On remand the trial court shall specify a sentence for count 9.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 27, 2018, at approximately 2:00 a.m., Acuna and three passengers drove to a residential area where Acuna participated in burglarizing J.D.'s vehicle that was parked on the street in front of J.D.'s house. During the burglary, various tools and equipment were taken out of J.D.'s vehicle and put into Acuna's car. J.D. became aware of the burglary as it was occurring and confronted the perpetrators. An exchange of gunfire ensued, during which J.D. shot and damaged at least one of the front tires of the vehicle that Acuna was driving.

Acuna and his companions drove away from the scene with the damaged tire. Acuna was able to drive approximately 1.8 miles when he was forced to pull over at a freeway median because of a flat tire. According to one occupant of Acuna's car, as he drove to the freeway Acuna indicated that he thought he was being followed, saying "Oh, they're coming in back of us."

A short time after Acuna's car came to rest at the freeway median, 21-year-old Curtis Adams drove by Acuna's stranded vehicle and decided to stop and offer assistance. One of the occupants of Acuna's car was standing outside the car. Acuna was still in the driver's seat. Adams parked his car directly in front of Acuna's car. After Adams exited his car and took approximately two steps toward Acuna's car, Acuna shot Adams in the chest, killing him.

4

Immediately after the killing, Acuna attempted to drive away from the scene, but his damaged car was able to drive only about a quarter mile before Acuna was forced to abandon it on the shoulder of the freeway. Although police apprehended two of the occupants of Acuna's car a short time later in the vicinity of the abandoned car, Acuna was able to flee from the scene and was eventually located in Mexico.

Acuna was charged with murder (§ 187, subd. (a)); robbery (§ 211); burglary (§ 459); shooting at an occupied dwelling (§ 246); possession of a firearm by a felon (§ 29800, subd. (a)(1)); transporting an assault weapon (§ 30600, subd. (a)); possessing an assault weapon (§ 30605, subd. (a)); illegally possessing ammunition (§ 30305, subd. (a)(1)); and carrying a loaded firearm in a vehicle (§ 25850, subd. (a)). The information further alleged certain firearm enhancements, and with respect to the murder count, alleged the special circumstance that the murder was committed during a burglary (§ 190.2, subd. (a)(17)).

At trial, on the murder count, the People proceeded exclusively on the theory of felony murder. (§ 189, subd. (e).)[2] Specifically, the People argued that the killing was felony murder because it took place during Acuna's commission of a burglary, which was not yet complete at the time that

_____

[2] Acuna's trial took place after the felony-murder provision in section 189, subdivision (e) was amended to state: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life . . . ."

5

Acuna's car was disabled on the freeway.[3] Defense counsel, in contrast, argued that the killing did not qualify as felony murder because the burglary was already complete by the time Acuna reached the freeway.

The jury returned a verdict of guilt on the count of first degree murder and on all of the other counts except for the count charging Acuna with shooting at an occupied dwelling. The jury also made true findings on the firearm enhancements, including that Acuna intentionally and personally discharged a firearm during the murder, causing great bodily injury and death (§ 12022.53, subd. (d)), and on the special circumstance that the murder was committed during a burglary (§ 190.2, subd. (a)(17)).

The trial court sentenced Acuna to an indeterminate sentence of LWOP, a consecutive indeterminate term of 25 years to life, to which was attached a one-year enhancement, and a determinate sentence of 26 years, eight months. The trial court also imposed certain fines and fees, including a restitution fine of $10,000. Acuna appeals from the judgment.

In this consolidated appeal, we also consider Acuna's appeal from a postjudgment order in which the trial court amended the minute order from the sentencing hearing. Specifically, after it was brought to the trial court's attention that it failed during the sentencing hearing to pronounce sentence on count 9 for the conviction of carrying a loaded firearm in a vehicle (§ 25850, subd. (a)), the trial court issued an ex parte minute order on April 20, 2021, which specified a sentence of 365 days in custody with credit for time served for count 9.

---

[3]    As the jury was instructed, under the theory of felony murder Acuna could be convicted of murder regardless of whether he was the person who shot and killed Adams. Here, however, the jury made a true finding that Acuna was the shooter.

## II.

## DISCUSSION

A.  *The Trial Court Did Not Prejudicially Err by Refusing a Proposed Modification to the Jury Instructions Describing the Duration of the Crime of Burglary*

We first consider Acuna's contention that the trial court prejudicially erred in refusing defense counsel's proposed modification to the instructions that explained the duration of the crime of burglary for the purpose of the felony-murder escape rule.

A felony murder occurs when " 'the felony and murder were part of one continuous transaction.' " (*People v. Wilkins* (2013) 56 Cal.4th 333, 340.) Thus, to obtain a murder conviction under a felony-murder theory, the People were required to establish that the killing and Acuna's burglary of J.D.'s vehicle were part of the same transaction.  For the purpose of felony-murder liability, " '[f]light following a felony is considered part of the same transaction *as long as the felon has not reached a "place of temporary safety."* ' " (*Id.* at p. 345.)  More specifically, in the context of a burglary, "felony-murder liability continues during the escape of a burglar from the scene of the burglary until the burglar reaches a place of temporary safety." (*People v. Bodely* (1995) 32 Cal.App.4th 311, 314.)

With respect to felony murder, the trial court instructed the jury with modified versions of CALCRIM Nos. 540A and 540B.  As relevant here, the jury was instructed that to find Acuna guilty under a felony-murder theory it was required to find, among other things, that *"[w]hile committing [a] burglary"* either Acuna or another perpetrator caused the death of another

7

person. (Italics added.)[4] Moreover, those instructions stated that "[t]he crime of burglary continues until a defendant has reached a place of temporary safety. A place of temporary safety will be defined in another instruction."

The trial court relied on CALCRIM No. 3261 to define "a place of temporary safety":

> "The crime of burglary continues until the perpetrator has actually reached a place of temporary safety.
>
> "The perpetrators has [*sic*] reached a place of temporary safety if:
>
> "• He has successfully escaped from the scene; and
>
> "• He is not or is no longer being chased; and
>
> "• He has unchallenged possession of the property."

During the conference on jury instructions, defense counsel proposed that the jury be instructed that a burglary "is complete when the perpetrator has eluded any pursuers and, *even momentarily*[,] reached a place of temporary safety, and is in unchallenged possession of the stolen property after having effected an escape with such property."[5] (Italics added.) As

---

[4] CALCRIM No. 540A applied if the jury determined that Acuna was the killer; CALCRIM No. 540B applied if the jury determined that a coparticipant was the killer.

[5] Specifically, defense counsel proposed that this language be added to CALCRIM No. 540A. The trial court declined to add the proposed language to CALCRIM No. 540A, but it did add to CALCRIM No. 540A a statement that "[a] place of temporary safety will be defined in another instruction," namely CALCRIM No. 3261. In formulating the version of CALCRIM No. 3261 that would be given to the jury, the trial court did not include the "even momentarily" language proposed by defense counsel for CALCRIM No. 540A. We note that defense counsel did not renew his request that the phrase "even

defense counsel argued, the reference to "even momentarily" reaching a place of temporary safety was necessary because the instructions did not explain that "[i]f a person reaches a place of temporary safety, that's it. Even if they're put into jeopardy thereafter." The trial court declined to incorporate defense counsel's specific proposed language.

Acuna contends that the trial court prejudicially erred by not including defense counsel's proposed language that a burglary is complete if a place of temporary safety is reached "*even momentarily*." According to Acuna, the trial court erred in refusing the requested language because "the requested pinpoint instruction on momentary safety was a legally correct statement of black letter law that was directly relevant to the very essence of the defense case." Acuna explains that "the 'defense theory of the case' was that the four people in [Acuna's] car had reached a place of temporary safety for a 'moment' at some point after their car stalled out on the freeway and prior to the murder of Adams." Specifically, "as [defense counsel] argued at closing, there was a brief period of time where the four people were in the clear from the car burglary: the time when they stalled out and pulled over, when [they] did not see the car burglary victim pull up behind them, and when [one of the occupants of Acuna's car] got out of the car. . . . [Defense counsel's] argument was that this was a place of temporary safety – for whatever **momentary** period of time it was when thought they were in the clear from the car burglary . . . ."

"A proper pinpoint instruction must be given at a defendant's request." (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 498.) "The court may, however, 'properly refuse an instruction offered by the defendant if it

momentarily" be inserted in CALCRIM No. 3261 after the trial court rejected his request that it be inserted in CALCRIM No. 540A.

incorrectly states the law, is argumentative, duplicative, or potentially confusing [citation], or if it is not supported by substantial evidence.'" (*People v. Hovarter* (2008) 44 Cal.4th 983, 1021.)

Acuna relies on *People v. Boss* (1930) 210 Cal. 245, 250 (*Boss*) and the subsequent opinions quoting it, for the proposition that "even momentarily" should have been included in the jury instructions. (See, e.g., *People v. Salas* (1972) 7 Cal.3d 812, 822; *People v. Johnson* (1992) 5 Cal.App.4th 552, 559.) Our Supreme court in *Boss* stated, "It is a sound principle of law which inheres in common reason that where two or more persons engage in a conspiracy to commit robbery and an officer or citizen is murdered while in immediate pursuit of one of their number who is fleeing from the scene of the crime with the fruits thereof in his possession, or in the possession of a co-conspirator, the crime is not complete in the purview of the law, inasmuch as said conspirators have not won their way *even momentarily* to a place of temporary safety and the possession of the plunder is nothing more than a scrambling possession. In such a case the continuation of the use of arms which was necessary to aid the felon in reducing the property to possession is necessary to protect him in its possession and in making good his escape." (*Boss*, at pp. 250-251, italics added.)

We need not, and do not, determine whether, as Acuna contends (1) *Boss, supra,* 210 Cal. at page 250, stands for the proposition that a crime is complete when a place of temporary safety is reached only for a moment; and (2) the trial court therefore should have relied on *Boss* to instruct on that principle. Instead, we reject Acuna's argument because, even assuming the trial court erred, Acuna has not established that any error was prejudicial. "We apply the 'reasonable probability' test of prejudice to the court's failure to

give a legally correct pinpoint instruction." (*People v. Pearson* (2012) 53 Cal.4th 306, 325.)

Here, regardless of whether the phrase "even momentarily" was included in the jury instructions, defense counsel was still able to make an effective argument to the jury that Acuna had reached a place of temporary safety at the time of the killing, if only for a short time. Relying on the jury instructions that referred to "a place of temporary safety," defense counsel argued to the jury, "Once you reach that place of temporary safety, *even if it's just for a little bit*, the burglary is over. Even if it's not safe at some later point—and it could be for a short time that you're at a place of temporary safety—the burglary is still over. . . . [T]hat's why it says temporary safety. That's why it doesn't say permanent safety. Once you're safe, you're safe. The burglary is over." (Italics added.) Defense counsel explained, "What it means is you have to be at a place, *at least for a moment*, that nobody is chasing you." (Italics added.) According to defense counsel, Acuna and his companions "all had reached, *at least for a moment*, a place of safety. Didn't last long, but they were there *for that moment*." (Italics added.) No additional instructional language was needed for defense counsel to make those arguments.

Moreover, based on our review of the evidence presented at trial, the central issue for the jury in determining whether the burglary was over at the time of the killing was whether a person stranded on the freeway with a flat tire in a car full of items stolen in a recent and nearby burglary could be described as having reached a place of safety for *any* length of time. Acuna was in a vulnerable and exposed position after the burglary because he was forced to pull over on the side of the freeway due to a flat tire. Indeed, the most logical inference from the evidence is that Acuna killed Adams precisely

11

*because of* that vulnerable and exposed position, either because he thought Adams was someone pursuing him after the burglary or because he didn't want Adams to act as a witness to the fact that he was fleeing from the scene of a burglary.

In sum, based on the evidence presented at trial and counsel's closing argument, there is no reasonable probability that Acuna would have obtained a more favorable result at trial had the jury been instructed that a burglary is over when a defendant reaches a place of temporary safety "even momentarily."

B.  *The Trial Court Did Not Prejudicially Abuse Its Discretion with Respect to Its Ruling Allowing the People to Show the Jury a Photograph of Adams and to Present Testimony That Adams Was in the Navy*

We next consider Acuna's contention that the trial court prejudicially erred as to its rulings regarding the admissibility of a photograph depicting Adams when he was alive and testimony that Adams was in the Navy.

The People filed a motion in limine for permission to show the jury a photograph of Adams while he was alive, possibly including a photo of Adams in his military uniform. Acuna filed an opposition to the motion. During the hearing on motions in limine, the People indicated that despite the statement in their written motion, they were not planning to use a photograph of Adams in his military uniform. The prosecutor stated, "I had a couple ones that were given by the family, but . . . I was actually going to possibly ask them for a different one because there were a few where he's in his military uniform, which I believe he was not wearing a military uniform at the time. But the . . . one that I would use would be just showing his stature, his build, what he looks like, a single photograph of it." The trial court ruled that it was "inclined" to allow the People to show the jury a single photograph of Adams to show his "build and size" and to demonstrate whether Adams resembled

the burglary victim J.D. The trial court reserved making a final ruling, stating that it would hear further argument on the issue, if necessary, after the People decided which photo they would use.

At trial, the People showed the jury a photo of Adams in civilian clothing. Specifically, People's exhibit 39 depicts Adams wearing a black sweatshirt and sweatpants while he poses in front of a white car. Defense counsel did not object to the specific photograph.

During motions in limine, defense counsel also asked that the trial court limit the evidence the People could present about the fact that Adams was in the military.[6] The trial court ruled, "As far as I'm concerned, the People can present evidence that he was in the military and that he was with his girlfriend and how they were driving and where they were going that night. In terms of the wonderful stuff about his life and other regards, probably not. So I guess the watery ruling I'm making is, I'll allow some but not too much, and I'll know it when I see it. So make objections at the time if you think it's gone too far."

At trial, the jury heard about Adams's military service only through a brief statement during the testimony of Adams's girlfriend, who was with Adams in the car when Adams stopped on the freeway to offer help to Acuna. Adams's girlfriend explained that she and Adams were driving on the freeway because Adams had picked her up from a friend's house and they were heading back to the Navy base in Coronado. Specifically, the following exchange took place:

---

[6] The motion in limine was originally filed by Acuna's co-defendant, who did not end up being tried together with Acuna. Acuna orally joined in the motion. As counsel for Acuna's co-defendant argued, evidence that Adams was in the military should be excluded because it might prejudice the jury against the defendants and make the jury want to punish someone.

13

"Q.    All right.  And when he picked you up, where were you going?

"A.    We were going back to Coronado base.

"Q.    And why were you going back to Coronado base?

"A.    Because he's in the Navy and that's where he stayed."

Defense counsel made no objection to this testimony during trial.

On appeal, Acuna argues that "the trial court abused its discretion by allowing irrelevant evidence – that Adams was an active military member and a photo of him in his military uniform."  Acuna argues, "the murder of Adams had absolutely nothing to do with his active military service, and there was no reason why the jury needed to hear evidence that Adams was in the military and see a photo of him in his military uniform."  Acuna contends that the trial court should have excluded the evidence as irrelevant under Evidence Code section 210 or as unduly prejudicial under Evidence Code section 352.

Evidence Code section 210 defines relevant evidence as "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action."  (*Id.*)  Although only relevant evidence is admissible (Evid. Code, § 350), "[t]he trial court has broad discretion . . . in determining the relevance of evidence" (*People v. Horning* (2004) 34 Cal.4th 871, 900).  Further, under Evidence Code section 352, "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."  (Evid. Code, § 352.)  " ' "A trial court's exercise of discretion in admitting or excluding evidence is reviewable for abuse [citation] and will not be disturbed

14

except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Case* (2018) 5 Cal.5th 1, 46.)

We reject Acuna's contention that the trial court prejudicially erred by allowing the People to show the jury a photo of Adams in his military uniform because that is simply not what occurred at trial. The jury was shown a photo of Adams in *civilian clothing* with no indication in the photo of Adams's military service.

To the extent that Acuna intends to argue that it was prejudicial error for the trial court to allow the People to show the jury *any* photograph of Adams while alive, the argument lacks merit. The photograph of Adams was relevant to the issues presented at trial because, among other things, it allowed the jury to assess whether Acuna may have shot at Adams either (1) because he looked physically imposing or (2) because he thought that Adams looked like the burglary victim J.D. Although our Supreme Court has stated that a trial court should be cautious about admitting a photograph of a murder victim when alive if the photograph has no relevance (see *People v. DeSantis* (1992) 2 Cal.4th 1198, 1230 [collecting cases]), our Supreme Court has generally approved a trial court's exercise of discretion to admit such a photograph when its admission does have some independent relevance. (See, e.g., *ibid*; *People v. Osband* (1996) 13 Cal.4th 622, 677; *People v. Smithey* (1999) 20 Cal.4th 936, 974-975; *People v. Harris* (2005) 37 Cal.4th 310, 331-332 ["the possibility that a photograph will generate sympathy does not compel its exclusion if it is otherwise relevant" and "[t]he decision to admit victim photographs falls within the trial court's discretion"].) Moreover, the trial court could reasonably conclude that the photograph of Adams was not unduly prejudicial because it is an ordinary and neutral photograph showing

15

a man in front of a car.  (Cf. *People v. Hovey* (1988) 44 Cal.3d 543, 571 [murder victim's photo, "though perhaps 'charming,' was nonetheless an 'ordinary' one not likely to produce a prejudicial impact"]; *Harris*, at p. 332 [video of murder victim was not unduly prejudicial for purposes of Evid. Code, § 352 analysis because it was "neutral and unremarkable"].)  The trial court did not abuse its discretion by allowing the People to show Adams's photograph to the jury.

Moreover, the trial court was well within its discretion to allow the brief testimony by Adams's girlfriend that Adams was in the Navy.  The trial court could reasonably conclude the evidence was relevant because it explained why Adams was on the freeway when he encountered Acuna's stranded vehicle, and it served to emphasize that Adams was in no way connected with Acuna or with the burglary that Acuna had just perpetrated.  Further, because the testimony was exceedingly brief, the trial court could reasonably conclude that it did not warrant exclusion as unduly prejudicial under Evidence Code section 352.

C.    *Acuna's Equal Protection Challenge to His Sentence of Life Without Parole*

We next consider Acuna's equal protection challenge to his sentence of life without the possibility of parole.

For the murder count, Acuna was given an LWOP sentence based on the special circumstance finding that the murder was committed in the course of a burglary.  (§ 190.2, subd. (a)(17).)  Acuna was 24 years old when he committed the murder.  The Legislature has provided in section 3051 for youthful offender parole hearings after 15, 20, or 25 years for young adults sentenced to indeterminate life terms *with* the possibility of parole (§ 3051, subd. (b)(1)-(3)).  Acuna's LWOP sentence makes him statutorily ineligible under section 3051 for a youth offender parole hearing.  (*Id.*, subd. (h) ["This

section shall not apply to cases . . . in which an individual is sentenced to life in prison without the possibility of parole for a controlling offense that was committed after the person had attained 18 years of age."].)

Acuna contends that section 3051 violates his constitutional right to equal protection because it grants future parole consideration to young adults with extremely lengthy indeterminate sentences (§ 3051, subd. (b)(1)-(3)), but denies it to young adults with LWOP sentences (*id.*, subd. (h)). Acuna argues, "The Legislature has classified two similarly situated groups in an unequal manner: (1) young adults who receive extremely lengthy indeterminate sentences (i.e., X years to life, where X is so great that the defendant will surely take his last breath in prison), who are entitled to youthful offender parole hearings; and (2) young adults sentenced to LWOP, who are not. There is no rational basis for this disparate treatment of these two similarly situated groups, as there was no legitimate reason for the Legislature to distinguish between young adults sentenced to LWOP versus those sentenced extremely lengthy indeterminate sentences that are functionally equivalent to LWOP."[7]

We independently review Acuna's equal protection challenge to section 3051. (*People v. Jackson* (2021) 61 Cal.App.5th 189, 195 (*Jackson*).)

1.    *The Statutory Background*

The Legislature enacted section 3051 in 2013 in response to judicial decisions establishing constitutional limits on the length of sentences for juvenile offenders. (See Stats. 2013, ch. 312, § 1; *People v. Franklin* (2016) 63

---

[7]    The People argue that Acuna's equal protection challenge is forfeited because he did not raise it in the trial court. The argument lacks merit. Because Acuna makes a facial constitutional challenge to his sentence, raising a pure question of law, the challenge may be raised for the first time on appeal. (*In re Sheena K.* (2007) 40 Cal.4th 875, 885-886, 889.)

Cal.4th 261, 277.)  The statute gives eligible young offenders the opportunity for parole in their 15th, 20th, or 25th year of incarceration depending on the length of sentence they are serving for their "controlling offense" (i.e., the offense for which the longest sentence was imposed).  (§ 3051, subds. (b)(1)-(4), (a)(2)(B); see *Franklin*, at p. 277.)  When enacting section 3051, the Legislature recognized "that youthfulness both lessens a juvenile's moral culpability and enhances the prospect that, as a youth matures into an adult and neurological development occurs, these individuals can become contributing members of society."  (Stats. 2013, ch. 312, § 1.)

As originally enacted, section 3051 applied only to offenders who were under 18 when they committed their crimes.  (Stats. 2013, ch. 312, § 4; *In re Jenson* (2018) 24 Cal.App.5th 266, 277.)  The Legislature later extended its operation to offenders who were under 23, and then to those who were under 26, at the time of their crimes.  (Stats. 2015, ch. 471, § 1; Stats. 2017, ch. 675, § 1; see *Jenson*, at p. 277.)  These amendments reflected the Legislature's recognition that young adults are not yet fully matured and, thus, have a lower degree of culpability and an increased potential for rehabilitation when compared with fully matured adult offenders.  (Assem. Com. on Pub. Safety, Analysis of Assem. Bill No. 1308 (2017-2018 Reg. Sess.), as amended Mar. 30, 2017, p. 2.)

The current version of section 3051 excludes several categories of youth offenders:  young adult (but not juvenile) offenders sentenced to LWOP; recidivist offenders sentenced under the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12); sex offenders sentenced under the One Strike law (§ 667.61); and offenders "to whom [the statute] would otherwise apply, but who, subsequent to attaining 26 years of age, commit[] an additional crime for

18

which malice aforethought is a necessary element of the crime or for which the individual is sentenced to life in prison." (§ 3051, subd. (h).)[8]

2. *Legal Standards Governing an Equal Protection Challenge*

"Both the Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution guarantee to all persons the equal protection of the laws. The right to equal protection of the laws is violated when 'the government . . . treat[s] a [similarly situated] group of people unequally without some justification.' [Citations.] 'The California equal protection clause offers substantially similar protection to the federal equal protection clause.' " (*Jackson, supra*, 61 Cal.App.5th at p. 195.)

Where, as here, no suspect class or fundamental right is involved, we assess an equal protection challenge by determining "whether a statutory distinction is so devoid of even minimal rationality that it is unconstitutional as a matter of equal protection." (*People v. Chatman* (2018) 4 Cal.5th 277, 289.) To conduct that inquiry, "we typically ask two questions. We first ask whether the state adopted a classification affecting two or more groups that are similarly situated in an unequal manner. . . . If we deem the groups at issue similarly situated in all material respects, we consider whether the challenged classification ultimately bears a rational relationship to a legitimate state purpose. . . . A classification in a statute is presumed rational until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable." (*Ibid.*, citations omitted.) " 'This so-

___

8 Our Supreme Court is currently considering whether section 3051 violates the right to equal protection by excluding young adults convicted and sentenced for serious sex crimes under the One Strike law (§ 667.61) from youth offender parole consideration, while young adults convicted of first degree murder are entitled to such consideration. (*People v. Williams* (2020) 47 Cal.App.5th 475, review granted July 22, 2020, S262229.)

called "rational basis" scrutiny is exceedingly deferential: A law will be upheld as long as a court can "speculat[e]" any rational reason for the resulting differential treatment, regardless of whether the "speculation has 'a foundation in the record,'" regardless of whether it can be "empirically substantiated," and regardless of whether the Legislature ever "articulated" that reason when enacting the law.'" (*Jackson*, *supra*, 61 Cal.App.5th at p. 196.)

3. *There Is a Rational Basis for Treating Young Adult Offenders Sentenced to LWOP Differently Than Young Adult Offenders Sentenced to Long Indeterminate Sentences with the Possibility of Parole*

Here, we need not, and do not, decide whether the two groups that Acuna compares are similarly situated. Even assuming, without deciding, that young adults who receive extremely lengthy indeterminate sentences are similarly situated to young adults who receive LWOP sentences, Acuna's equal protection claim fails because "[t]here is . . . a rational basis for distinguishing between a young adult LWOP offender and a young adult offender serving a non-LWOP sentence: the severity of the crime committed." (*People v. Acosta* (2021) 60 Cal.App.5th 769, 780 (*Acosta*).)

"The Legislature has prescribed an LWOP sentence for only a small number of crimes. These are the crimes the Legislature deems so morally depraved and so injurious as to warrant a sentence that carries no hope of release for the criminal and no threat of recidivism for society. In excluding LWOP inmates from youth offender parole hearings, the Legislature reasonably could have decided that youthful offenders who have committed such crimes—even with diminished culpability and increased potential for rehabilitation—are nonetheless still sufficiently culpable and sufficiently dangerous to justify lifetime incarceration." (*In re Williams* (2020) 57 Cal.App.5th 427, 436.)

"[T]here is a rational basis for distinguishing . . . young adult offenders sentenced to de facto life without parole. The Legislature may rationally treat offenders in this group less harshly because it deems their underlying crimes, such as first degree murder, less grave than special circumstance murder. . . . Most people sentenced to life without parole . . . have committed *both* first degree murder *and* been found to have committed that murder under one of the aggravating circumstances specified in the special circumstance murder statute." (*People v. Sands* (2021) 70 Cal.App.5th 193, 204.) Here, Acuna's LWOP sentence was based on his commission of a special circumstance murder, which " 'carries a mandatory sentence of LWOP or death (§ 190.2, subd. (a)), which are the harshest penalties available under our penal system and are reserved for crimes of the most heinous nature.' [Citation.] 'The Legislature rationally judged this crime to be more severe and more deserving of lifetime punishment than nonspecial circumstance first degree murder. This judgment is "both the prerogative and the duty of the Legislature" and "[e]qual protection analysis does not entitle the judiciary to second-guess the wisdom, fairness, or logic" of that judgment.' [Citation.] Thus, the statute, on its face, does not violate equal protection." (*Acosta*, *supra*, 60 Cal.App.5th at p. 780.)

Therefore, as this court explained in *Jackson,* "[g]iven the deferential standard we apply in determining rationality for equal protection purposes, we conclude public safety, and the desire to punish those persons who commit first degree special circumstance murder more harshly than persons who commit first degree murder without aggravating circumstances, provide a plausible basis for our Legislature to treat these two classifications differently for purposes of section 3051." (*Jackson, supra*, 61 Cal.App.5th at p. 200; see also *People v. Morales* (2021) 67 Cal.App.5th 326, 349 (*Morales*)

21

[citing the same considerations as *Jackson* in concluding "there is a rational basis for the Legislature's decision to treat youthful offenders sentenced to LWOP differently than youthful first degree murderers not sentenced to LWOP"].)

We acknowledge that several of our colleagues on this and other courts, including Justice Liu of our Supreme Court, have expressed concerns about the Legislature's decision to treat young adult LWOP offenders differently from other youthful offenders in enacting section 3051, and they have urged the Legislature to reconsider its approach. (See *Jackson, supra*, 61 Cal.App.5th at p. ___ [2021 Cal.App. Lexis 152 at p. *22] (conc. statement of Liu, J.) [stating that "[a]s of this writing, at least 11 justices of the Court of Appeal have called for legislative reconsideration of section 3051," and "echo[ing]" those comments]; *Morales, supra*, 67 Cal.App.5th at p. 350.)[9] While acknowledging these concerns, we echo what the court stated in *Acosta*, "In the end, however, we cannot insert our own policy concerns into the analysis. . . . '[E]qual protection analysis does not entitle [us] to second-guess the wisdom, fairness, or logic of the law.' . . . Having concluded there is a rational basis for treating young adult LWOP offenders differently, we must reject [the] equal protection challenge." (*Acosta, supra*, 60 Cal.App.5th at p. 781, citations omitted.)

---

[9] In *Morales*, one justice filed a concurrence and dissent, urging the Legislature to reconsider the matter, but also concluding that the exclusion of young adult LWOP offenders from section 3051 "is fundamentally irrational and denies youthful offenders sentenced to LWOP equal protection of the law." (*Morales, supra*, 67 Cal.App.5th at p. 350 (conc. & dis. opn. of Pollak, P.J.).)

22

D.  *The Trial Court Did Not Abuse Its Discretion or Violate Acuna's Right to Due Process by Imposing Certain Fines and Fees*

When sentencing Acuna, the trial court imposed the following fines and fees totaling $10,685:  a $10,000 restitution fine (§ 1202.4); a $280 court operations assessment fee (§ 1465.8); a $210 criminal conviction assessment fee (Gov. Code, § 70373); a $154 criminal justice administration fee (former Gov. Code, § 29550.1); and a $41 theft fine (§ 1202.5).  Acuna contends that he does not have the ability to pay the fines and fees, and accordingly, the trial court erred in imposing them.

Acuna's sentencing took place after the issuance of *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), which held that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments under . . . section 1465.8 and Government Code section 70373" and that, "although . . . section 1202.4 bars consideration of a defendant's ability to pay unless the judge is considering increasing the fee over the statutory minimum, the execution of any restitution fine imposed under this statute must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Dueñas,* at p. 1164.)[10]

_____

[10]  Numerous subsequent cases have addressed the issue presented in *Dueñas*, *supra*, 30 Cal.App.5th 1157, including case law expressing the view that the appropriate analysis for punitive fines should be based on the excessive fines clause of the Eighth Amendment and its counterpart in the California Constitution (Cal. Const., art. I, § 17), rather than on principles of due process.  (See, e.g., *People v. Kopp* (2019) 38 Cal.App.5th 47, 94, review granted Nov. 13, 2019, S257844 (*Kopp*); *People v. Cowan* (2020) 47 Cal.App.5th 32, 43, review granted June 17, 2020, S261952.)  The validity of *Dueñas* is unsettled and will be decided by our Supreme Court in currently pending cases.  (E.g., *Kopp*.)

23

Here, when turning to the issue of fines and fees, the trial court stated that it was aware that the issues in *Dueñas*, *supra*, 30 Cal.App.5th 1157, were pending before our Supreme Court. The trial court then observed, "The *Dueñas* case held that imposing fines, fees, and costs, and a restitution fine on someone who is indigent or lacks the ability to pay is a violation of due process. The Court of Appeal that we answer to, the 4th District Division 1, disagrees that it is a due process analysis, and instead says that it must be analyzed under the excessive fines clause of the Eighth Amendment, at least this has to do with the restitution fine." The trial court stated that it assumed defense counsel intended to object to the imposition of the fines under *Dueñas* based on Acuna's inability to pay. Defense counsel confirmed that he intended that objection.

The trial court then made the following findings and orders:

"In view of the fact that this is a life without parole sentence, I am going to impose . . . the maximum restitution fine of $10,000. I choose the maximum given the seriousness of the offense. . . .

"I do impose the Court security fee in the amount of $40 per count for seven counts for $280, the 70373 fee in the amount of $30 per count for seven counts for a total of $210[.] [T]he criminal justice administration fee in the amount of $154, and the theft fine are both imposed.

"In making these impositions I note that I am mindful of a footnote in one of the cases under the *Duenas* decision that points out that prison wages should be adequate to pay these expenses, given the length of the sentence in this case. And, therefore, I do find ability to pay, even though he has no assets and no other way of support. But he is going to be in prison for the rest of his life until he draws his last breath, and I think that will give him time to pay these from prison wages."

24

Acuna argues that the trial court erred in making these orders and violated his right to due process by doing so because he is indigent and will not be able to earn enough in prison wages over his lifetime to pay fines and fees totaling $10,685. Citing regulations setting forth the pay schedule for prison inmates and a Legislative Analyst's Report, which Acuna interprets as showing a high unemployment rate in California prisons, Acuna argues that "the mere fact that an inmate is serving a life sentence does not in any way equate to an ability to pay $10,685 in fines and fees." Acuna seeks an order vacating all of the fines and fees imposed by the trial court.

We review the trial court's ruling imposing fines and fees in a certain amount under an abuse of discretion standard. (*People v. Lewis* (2009) 46 Cal.4th 1255, 1321 (*Lewis*); *People v. Potts* (2019) 6 Cal.5th 1012, 1057 (*Potts*).)

1. *The $10,000 Restitution Fine*

We begin with the $10,000 restitution fine. Section 1202.4, subdivision (b) states, "In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record." (§ 1202.4, subd. (b).) For felony convictions, the amount of the fine is set at the discretion of the court in an amount between $300 and $10,000 and "shall be . . . commensurate with the seriousness of the offense." (*Id.*, subd. (b)(1).) The statute directs that "[i]n setting the amount of the fine . . . in excess of the minimum fine . . . , the court shall consider any relevant factors, including, but not limited to, the defendant's inability to pay, the seriousness and gravity of the offense and the circumstances of its commission, any economic gain derived by the defendant as a result of the crime, the extent to which any other person suffered losses as a result of the

25

crime, and the number of victims involved in the crime. Those losses may include pecuniary losses to the victim or the victim's dependents as well as intangible losses, such as psychological harm caused by the crime. Consideration of a defendant's inability to pay may include the defendant's future earning capacity. A defendant shall bear the burden of demonstrating the defendant's inability to pay." (*Id.,* subd. (d).)[11]

Here, Acuna was convicted of special circumstance murder along with robbery and burglary, among others. No one disputes that those are serious crimes. Therefore, the trial court was well within its discretion to conclude that the seriousness of Acuna's offenses supported the maximum restitution fine of $10,000, regardless of Acuna's financial resources. (*Lewis, supra*, 46 Cal.4th at p. 1321 ["defendant's assertion that he was unable to pay the [restitution] fine did not compel the court to impose a lesser fine. In light of the offenses committed by defendant and the harm he caused to the victim and her children, we find no abuse of discretion in the trial court's determination that a fine in the amount of $10,000 was appropriate."].)

Implicit in Acuna's argument that the trial court abused its discretion in selecting a $10,000 restitution fine is the premise that the trial court identified Acuna's ability to pay a fine of $10,000 as one of the grounds for choosing that amount. Acuna argues that if the trial court's ability-to-pay determination is flawed, then the trial court's decision to impose a fine of $10,000 was an abuse of discretion. We do not agree with the premise of

---

11     The statute also gives a formula that the trial court may elect to use in its discretion when determining the amount of the restitution fine: "In setting a felony restitution fine, the court may determine the amount of the fine as the product of the minimum fine pursuant to paragraph (1) [i.e., $300] multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted." (§ 1202.4, subd. (b)(2).)

Acuna's argument. The trial court did not cite Acuna's ability to earn prison wages as a factor that led it to choose the maximum $10,000 restitution fine. Indeed, the trial court was clear in stating that "I choose the maximum given the seriousness of the offense." Only *after* selecting a maximum restitution fine of $10,000, based on the seriousness of Acuna's offense, did the trial court make a finding regarding Acuna's ability to pay. The trial court plainly made that finding for the *separate* reason of satisfying the constitutional requirements identified in the *Dueñas* line of cases, which hold that a trial court should make a finding regarding ability to pay when imposing fines and fees. (*Dueñas, supra*, 30 Cal.App.5th at p. 1164.)

The law is clear that the trial court was not required to limit the restitution fine to an amount that Acuna was able to pay. A restitution fine is not "automatically invalid if a defendant is unable to pay it. . . . Inability to pay is a factor for the court to consider in setting the amount of a restitution fine, alongside 'any relevant factors . . . .' " (*Potts, supra*, 6 Cal.5th at p. 1056.) A court may properly "conclude that the monetary burden the restitution fine imposed on defendant [is] outweighed by other considerations." (*Id.* at p. 1057.) Here, by stating that the amount of the restitution fine was based on the seriousness of Acuna's offense, the trial court properly exercised its discretion to elevate that consideration over any other factor, even if Acuna may not end up having the ability to pay the $10,000 fine.

Aside from arguing that the trial court abused its discretion in selecting a $10,000 restitution fine, Acuna argues that the trial court violated his right to due process by imposing the fine because he had no ability to pay it. To support his argument, Acuna relies on *Dueñas* for the principle that a defendant has a due process right to be free from the imposition of fines and

fees that the defendant cannot pay. (*Dueñas, supra*, 30 Cal.App.5th at p. 1164.) According to Acuna, if the trial court was incorrect in determining he had the ability to pay the restitution fine, then that fine was imposed in violation of Acuna's right to due process.

We reject Acuna's due process argument as applied to the restitution fine. As this court held in *Kopp*, a restitution fine is intended "to punish defendants." (*Kopp, supra*, 38 Cal.App.5th at p. 96, review granted.) Accordingly, "a defendant should challenge such fines under the excessive fines clause of the Eighth Amendment of the federal constitution and article I, section 17 of the California Constitution. Put differently, there is no due process requirement that the court hold an ability to pay hearing before imposing a punitive fine and only impose the fine if it determines the defendant can afford to pay it." (*Kopp*, at pp. 96-97.) Acuna has asserted only a due process challenge to the restitution fine, not a challenge under the excessive fines clause of the Eighth Amendment (or the California counterpart). Therefore, his constitutional challenge to the restitution fine lacks merit.

2.      *The Remaining $685 in Fees*

Turning to the remaining fees, they amount to $685. Acuna does not separately address the $685 in fees. Instead, he groups them together with the $10,000 restitution fine to argue that the trial court abused its discretion and violated his right to due process in imposing them.

Assuming without deciding that *Dueñas, supra*, 30 Cal.App.5th 1157, and subsequent case law correctly hold that principles of due process (rather than the constitutional prohibition on excessive fines) preclude a court from

imposing non-punitive fees when a defendant lacks the ability to pay,[12] Acuna has not established that the trial court incorrectly imposed the $685 in fees. Even if, as Acuna contends, prisoners earn wages at a slow and inconsistent rate, and that there is a high unemployment rate in prison, the trial court was well within its discretion to find that Acuna's ability to earn prison wages over an entire lifetime of incarceration would nevertheless be sufficient to pay fees totaling only $685. (See *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1076 [in determining ability to pay, the court may consider the defendant's ability to obtain prison wages]; *People v. Lopez-Vinck* (2021) 68 Cal.App.5th 945, 950 (*Lopez-Vinck*) [same]; *People v. Johnson* (2019) 35 Cal.App.5th 134, 139 ["The idea that [defendant] cannot afford to pay $370 while serving an eight-year prison sentence is unsustainable"]; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1035 ["Given that the restitution fine is $300 and the assessments are $70, [defendant] will have sufficient time to earn these amounts during his [six-year] sentence, even assuming [defendant] earns nothing more than the minimum"].)

E.  *Due to the Enactment of Government Code Section 6111, Any Balance of the Criminal Justice Administration Fee Imposed Pursuant to Government Code Section 29550.1 That Remains Unpaid as of July 1, 2021 Must Be Vacated*

Part of the fines and fees that the trial court imposed during sentencing was a $154 criminal justice administration fee (former Gov. Code, § 29550.1).

---

[12]  There is some disagreement in the case law as to whether, when non-punitive fees are at issue, the proper constitutional analysis (if any) is also under the Eighth Amendment's excessive fines clause rather than under principles of due process as set forth in *Dueñas, supra,* 30 Cal.App.5th 1157. (See, e.g., *Kopp, supra,* 38 Cal.App.5th at p. 99, review granted, Benke, J., conc. in part.)

As of July 1, 2021, the statutory provision pursuant to which the trial court ordered Acuna to pay a $154 criminal justice administration fee was repealed (see former Gov. Code, § 29550.1) and newly enacted Government Code section 6111 became effective. The newly enacted provision states: "(a) On and after July 1, 2021, *the unpaid balance* of any court-imposed costs pursuant to [Government Code] Section 27712, subdivision (c) or (f) of [Government Code] Section 29550, and [Government Code] Sections 29550.1, 29550.2, and 29550.3, as those sections read on June 30, 2021, is unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated. [¶] (b) This section shall become operative on July 1, 2021." (Gov. Code, § 6111, italics added.)

Acuna argues that we should strike the entire $154 criminal justice administration fee because the newly enacted law applies retroactively to cases that are not yet final on appeal under the principles set forth in *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).

This court's recent opinion in *Lopez-Vinck*, *supra*, 68 Cal.App.5th 945, resolves the issue of whether Government Code section 6111 applies retroactively to afford relief to defendants, such as Acuna, whose convictions are not yet final. As we explained, "Because [Government Code] section 6111 indicates a legislative intent to extend the ameliorative changes in the law regarding the imposition of administrative fees to individuals serving both final and nonfinal sentences, but only to the extent of relieving those individuals of *the burden of any debt that remains unpaid* on and after July 1, 2021, the *Estrada* rule does not apply, and [a defendant] is not entitled to have the fee imposed pursuant to Government Code section 29550.1 vacated in its entirety as a result of the repeal of section 29550.1." (*Lopez-Vinck*, at p. 953, italics added.)

30

As stated in *Lopez-Vinck*, however, under the terms of the statute, a defendant in Acuna's position is nevertheless "entitled to the vacatur of that portion of the criminal justice administration fee imposed pursuant to Government Code section 29550.1 that remains unpaid as of July 1, 2021, and to the modification of his judgment consistent with such vacatur." (*Lopez-Vinck*, *supra*, 68 Cal.App.5th at p. 953.) We therefore vacate any balance of the $154 imposed by the trial court pursuant to Government Code section 29550.1 that remains unpaid as of July 1, 2021.[13]

F.      *Remand Is Required to Allow the Trial Court to Decide Whether to Exercise Its Discretion Under Section 654 to Choose a Different Count on Which to Impose Punishment*

At sentencing, the trial court determined that several of the counts were subject to section 654 because they arose from a single act or omission. At the time of Acuna's sentencing, section 654 provided that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the *longest potential term of imprisonment*, but in no case shall the act or omission be punished under more than one provision." (Former § 654, subd. (a), italics added.) Accordingly, the trial court imposed punishment on the robbery count (§ 211) (count 2), which had the longest potential term of imprisonment, and it stayed punishment on the remaining counts that were subject to section 654.

---

[13]      As we explained in *Lopez-Vinck*, "[A]ny individual whose sentence is final will not be required to pay the remaining balance of such fees, regardless of whether that remaining balance is formally vacated by a court. However, given the language of [Government Code] section 6111, a defendant whose judgment is on appeal and who requests the vacatur of any remaining unpaid fees is entitled to have vacated any portion of the fees imposed pursuant to any of the statutes identified in [Government Code] section 6111 that remain unpaid as of July 1, 2021, rather than having his sentence affirmed." (*Lopez-Vinck*, *supra*, 68 Cal.App.5th at p. 953, fn. 8.)

Effective January 1, 2022, section 654 was amended pursuant to Assembly Bill No. 518 (Stats. 2021, ch. 441, § 1) to provide the trial court with the discretion to choose the count for which it will impose punishment rather than requiring the trial court to select the count with the longest potential term of imprisonment. Specifically, section 654 now provides in relevant part, "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions." (§ 654, subd. (a).)

Acuna contends that because his case is not yet final on appeal, he is entitled to the benefits of the amended version of section 654 pursuant to the principles of retroactivity set forth in *Estrada, supra*, 63 Cal.2d 740. The People agree. As the People explain, "In an analogous situation, appellate courts held that the recent statutory amendments to sections 12022.5 and 12022.53, which granted trial courts discretion to strike firearm enhancements in the interest of justice pursuant to section 1385, were retroactive to non-final judgments. (See, e.g., *People v. Valenzuela* (2018) 23 Cal.App.5th 82, 87-88; *People v. Woods* (2018) 19 Cal.App.5th 1080, 1090-1091; *People v. Robbins* (2018) 19 Cal.App.5th 660, 678-679.) The reasoning of those cases applies in this case to Assembly Bill No. 518, which grants the trial court discretion to select any of the charges to impose sentence rather than only the offense with the longest potential term."

We accept the People's concession. The parties have identified a sound basis for concluding that Acuna is entitled to have the trial court apply the amended version of section 654 to his case because it is an ameliorative change to the law and his conviction is not yet final. (See, e.g., *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 308 [" 'in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to

the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not' "].) We accordingly remand this matter for the trial court to decide whether to exercise its discretion to choose a different count on which to impose punishment as among those subject to section 654.

G.      *Remand Is Required for the Trial Court to Apply the Newly Amended Section 1170*

Effective January 1, 2022, section 1170 was amended.  (See Sen. Bill No. 567 (2021-2022 Reg. Sess.); Stats. 2021, ch. 731, § 1.3; Assem. Bill No. 124 (2021-2022 Reg. Sess.); Stats. 2021, ch. 695, § 5.)  Those amendments are relevant here in two respects.

First, under the amended statute, a court must "order imposition of a sentence not to exceed the middle term," except under narrow circumstances. (§ 1170, subd. (b)(1).)  An upper term may be imposed "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (*Id.*, subd. (b)(2).)  Nevertheless, "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (*Id.*, subd. (b)(3).)  Here, Acuna was sentenced to the upper term on the principal count of his determinate term (robbery).  The trial court imposed the upper term based on Acuna's criminal history and on the circumstances of the robbery, which included shooting into a house.  Thus, at least in part, the upper term sentence was not based on "facts . . . stipulated to by the defendant, or . . . found true beyond a reasonable doubt at trial by the jury or

33

by the judge in a court trial" as required under the amended statute. (*Id*., subd. (b)(2).)

Second, the amended statute now includes a presumption in favor of the lower term sentence when a defendant is under 26 years of age at the time of the offense. (§ 1170, subd. (b)(6)(B).) "[U]nless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] . . . [¶] (B) The person is a youth, or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense." (§ 1170, subd. (b)(6); see § 1016.7, subd. (b) ["A 'youth' for purposes of this section includes any person under 26 years of age on the date the offense was committed"].) Here, as we have explained, Acuna was under 26 years of age when he committed the offenses.

Acuna contends that he is entitled to have the newly amended law applied to his case because it is not yet final on appeal. (*Estrada*, *supra*, 63 Cal.2d at p. 742.) The People concede that the amended statute should be applied retroactively and that Acuna should be resentenced. We accept the People's concession. (*People v. Flores* (Jan. 13, 2022, A160578, A161643) 73 Cal.App.5th 1032 ["The People correctly concede the amended version of section 1170, subdivision (b) that became effective on January 1, 2022, applies retroactively in this case as an ameliorative change in the law applicable to all nonfinal convictions on appeal."].) We accordingly vacate the sentence and remand for the trial court to apply the amended version of section 1170, subdivision (b) to Acuna's case.

H.    *The Trial Court Improperly Entered a Postjudgment Minute Order Pronouncing Sentence on Count 9*

During sentencing, the trial court neglected to pronounce sentence on count 9, under which Acuna was convicted of carrying a loaded firearm in a vehicle (§ 25850, subd. (a)).  The November 16, 2020 minute order for the sentencing hearing also did not specify a sentence for count 9.

However, during the sentencing hearing, the trial court made comments that indicated it would likely have ordered that the punishment on count 9 be stayed pursuant to section 654 had it not failed to do so because of an apparent oversight.  Specifically, the trial court collectively discussed several of the counts that all arose from the fact that Acuna had a firearm in his car while committing the robbery, namely the convictions for possession of a firearm by a felon (§ 29800, subd. (a)(1)) (count 5); transporting an assault weapon (§ 30600, subd. (a)) (count 6); possessing an assault weapon (§ 30605, subd. (a)) (count 7); and carrying a loaded firearm in a vehicle (§ 25850, subd. (a)) (count 9).  The trial court stated, "It seems to me that the transportation of the weapon in this case was for the purpose of committing the burglary, which then escalated into a robbery.  In other words, I don't see any evidence—even though he sold other illegal weapons over the Internet—I don't see any evidence that he was, for example, transporting this particular weapon to sell it to somebody.  I think he had it to use for the crime.  [Defense counsel], I am not asking you to admit that or not, but if that is the case, then isn't that the question of 654 is implicated [*sic*]?  If a person possesses a weapon with the intent of committing a robbery or burglary or ends up killing somebody, isn't that charge subject to Section 654 such that any punishment would have to be stayed?"  After hearing further argument from counsel, the trial court then returned to the issue, stating "I think that we need to address with respect to Counts 2 through 9 the impact of Section

35

654." The court said, "[g]iven that we have the transportation of the gun and the robbery, he cannot be punished for both. He can only be punished for one." However, when the trial court pronounced sentence, it stayed the punishment on counts 3, 5, 6, and 7, but it neglected to mention count 9 whatsoever.

On March 9, 2021, Acuna's appellate counsel wrote a letter to the trial court after noticing that the court had neglected to pronounce sentence on count 9. Specifically, counsel's letter brought the issue to the trial court's attention and stated that "the November 16, 2020 [sentencing] minute order should be corrected to indicate the court's disposition on count nine, presumably that the count was stayed under section 654." On April 20, 2021, the trial court issued an ex parte minute order. The order, which was by a judge who did not handle Acuna's sentencing, stated: "The minute order dated November 16, 2020 is corrected to reflect the disposition on Count nine as follows: Count 9-PC25850(a)- 365 days custody with credit for time served."

On April 30, 2021, Acuna filed a notice of appeal from the April 20, 2021 ex parte minute order.[14] Acuna sets forth several grounds on which he contends that the ex parte minute order should be vacated.

The People concede that the ex parte minute order should be vacated based on one of the grounds identified by Acuna. Specifically, the People agree with Acuna that the trial court exceeded its jurisdiction by issuing the ex parte minute order because it "did more than clarify, fix technical defects, or correct a clerical error to express the court's intent at the time of the

---

[14] We have consolidated Acuna's appeals from the judgment and the postjudgment order. We grant Acuna's request to take judicial notice of the appellate record and court file in Case No. D078365 when considering the appeal in Case No. D078885.

decree." (See, e.g., *Hamilton v. Laine* (1997) 57 Cal.App.4th 885, 890 ["nunc pro tunc orders may not be made to 'make the judgment express anything not embraced in the court's decision, even though the proposed amendment contains matters which ought to have been so pronounced' "]; *In re Candelario* (1970) 3 Cal.3d 702, 705 ["Any attempt by a court, under the guise of correcting clerical error, to 'revise its deliberately exercised judicial discretion' is not permitted"].)

We accept the People's concession that the trial court exceeded its jurisdiction. In issuing the ex parte minute order, the trial court did more than correct a clerical error; it improperly attempted to remedy a judicial error in failing to pronounce sentence. We accordingly order that the April 20, 2021 ex parte minute order be vacated to the extent it orders that "[t]he minute order dated November 16, 2020 is corrected to reflect the disposition on Count nine as follows: Count 9-PC25850(a)- 365 days custody with credit for time served."[15] On remand the trial court shall specify a sentence for count 9.

---

[15] The April 20, 2021 ex parte minute order also corrected certain clerical errors that are not at issue here. Those portions of the April 20, 2021 ex parte minute order are not vacated and remain in force.

## DISPOSITION

The ex parte minute order dated April 20, 2021 is vacated to the extent it orders that "[t]he minute order dated November 16, 2020 is corrected to reflect the disposition on Count nine as follows: Count 9-PC25850(a)- 365 days custody with credit for time served." The sentence is vacated and this matter is remanded for resentencing with directions that the trial court (1) decide whether to exercise its discretion under section 654 to impose punishment on a count other than count 2; (2) impose sentence based on the amended version of section 1170, subdivision (b); (3) vacate any portion of the $154 criminal justice administration fee imposed under Government Code section 29550.1 that is unpaid as of July 1, 2021; and (4) specify a sentence for count 9. In all other respects, the judgment is affirmed.

IRION, J.

WE CONCUR:

O'ROURKE, Acting P. J.

AARON, J.

38